IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00216-PAB-STV

TAYLOR MILLER,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

## ORDER

This matter is before the Court on defendant State Farm Mutual Automobile Insurance Co.'s Motion for Summary Judgment [Docket No. 35] and Defendant State Farm's Motion to Strike Affidavit of Taylor Miller [Docket No. 52]. Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") seeks an order dismissing all of plaintiff's claims. Docket No. 35 at 1-2. Plaintiff filed a response opposing State Farm's motion for summary judgment, Docket No. 50, and in support included an affidavit by plaintiff, Taylor Miller. Docket No. 50-1. State Farm seeks an order striking plaintiff's affidavit as a sham affidavit. Docket No. 52 at 2. Plaintiff opposes State Farm's motion. Docket No. 54. The Court has jurisdiction under 28 U.S.C. §1332.

**I. BACKGROUND**[1]

Plaintiff was involved in a motor vehicle accident with an underinsured motorist on October 31, 2020. Docket No. 35 at 4, ¶¶ 1, 5. The underinsured driver was insured

---

[1] The following facts are undisputed unless otherwise indicated.

under a policy that included bodily injury liability limits of $25,000.  *Id.*, ¶ 5.  Plaintiff had an automobile insurance policy (the "Nissan Policy") with State Farm for the 2019 Nissan Frontier he was driving at the time of the accident; the Nissan Policy did not include underinsured motorist ("UIM") coverage.  *Id.* at 4-5, ¶¶ 2, 6.

At the time of plaintiff's accident, plaintiff's parents were the named insureds on an insurance policy (the "Dodge Policy"[2]) provided by State Farm that included UIM insurance with a limit of $100,000 per person.  *Id.* at 5, ¶ 8.  Plaintiff was not named on this policy.  *Id.*, ¶ 9.  The Dodge Policy defines an insured as "(1) you; (2) resident relatives; (3) any other person, while occupying a vehicle that is owned by you or owned by any resident relative, and who is provided Liability Coverage through a policy issued by us . . .; and (4) any person entitled to recover compensatory damages as a result of bodily injury to an insured as defined in 1., 2., or 3., above."  Docket No. 35-7 at 56.  The Dodge Policy defines a resident relative as "a person who, at the time of the accident, is related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household, even if temporarily living elsewhere, and any ward or foster child who usually resides with the named insured, even if temporarily living elsewhere."  *Id.* at 50.

At the time of plaintiff's accident, plaintiff was residing at Oxford House in Longmont, Colorado, and had lived at Oxford House since November 2019.  Docket No. 50 at 9, ¶¶ 5-6; Docket No. 35 at 7, ¶¶ 29-30.  Oxford House is a residence for individuals recovering from alcoholism and drug addiction.  Docket No. 50 at 9, ¶ 6.

---

[2] The Court uses the name the parties use for the policy, which covered a 2001 Ram 1500 Dodge vehicle.  *See* Docket No. 35-6 at 1.

On November 3, 2020, plaintiff's law firm sent a letter to State Farm indicating that it represented plaintiff.  Docket No. 35 at 5, ¶ 11.  On November 18, 2020, defendant sent plaintiff a letter stating that plaintiff "may be entitled to underinsured motorist benefits."  *Id.*, ¶ 12 (quoting Docket No. 35-9 at 1).

On December 3, 2020, plaintiff's counsel sent defendant an email requesting that defendant "tender the benefits owed at this time," *id.*, ¶ 14 (quoting Docket No. 35-10), identifying $9,894.42 in medical expenses as a result of plaintiff's accident, and requesting a response from defendant in thirty days.  *Id.* at 6, ¶ 15.  Plaintiff also requested, if State Farm could not respond within thirty days, that State Farm provide a reason for the delay and an estimate on when it would respond.  *Id.*  Defendant responded to plaintiff's email on December 28, 2020, stating that "it appear[ed that plaintiff would] be fully compensated by the at fault party's insurance" and requesting more information concerning plaintiff's injuries and treatment.  *Id*, ¶ 17 (quoting Docket No. 35-11 at 1).

On December 29, 2020, plaintiff's counsel sent State Farm an email that attached a form authorizing the release of plaintiff's medical records to State Farm and included a list of plaintiff's medical providers.  *Id.*, ¶ 19.  On the same day, plaintiff's counsel sent State Farm a letter requesting "benefits owed" and stating that plaintiff had incurred $17,698.25 in medical expenses.  *Id.*, ¶¶ 20-21 (quoting Docket No. 35-13).  The letter stated, "[i]f you are unable to pay benefits within 30 days, please let us know how much additional time is needed and the reason for the delay."  *Id.*, ¶ 20; Docket No. 35-13 at 2.  On December 31, 2020, plaintiff's counsel sent an email to State Farm offering to make plaintiff available for a statement.  Docket No. 35 at 7, ¶ 22.  State

Farm agreed, and a claim specialist for defendant recorded a statement from plaintiff on December 31, 2020. *Id.*, ¶¶ 23-24. On January 4, 2021, State Farm requested certain medical records of plaintiff using the authorization to release such records provided by plaintiff. *Id.*, ¶ 25. On January 11, 2021, plaintiff filed this lawsuit against defendant alleging claims for breach of contract, statutory bad faith, and common law bad faith. *Id.*, ¶ 26; Docket No. 1-1.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of*

4

*Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Motion to Strike

The Court begins by addressing Defendant State Farm's Motion to Strike Affidavit of Taylor Miller. Docket No. 52. Defendant moves to strike plaintiff's affidavit that was submitted in response to defendant's motion for summary judgment. *Id.* at 2. Defendant argues the affidavit is a "sham affidavit" that was created as an attempt to defeat defendant's motion for summary judgment by inventing a sham factual dispute. *Id.* Plaintiff opposes defendant's motion. Docket No. 54.

Defendant requests that the Court exclude the affidavit and its exhibits under *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001), because plaintiff's affidavit conflicts with his prior testimony. Docket No. 52 at 3. In *Ralston*, the court held that the district court did not abuse its discretion in excluding an affidavit that "directly contradicted certain positions previously taken by [the affiant] and which were detrimental to [plaintiff's] sole remaining cause of action" because the circumstances supported a conclusion that the affidavit sought to create a "sham fact issue." 275 F.3d

5

at 973 (emphasis omitted).  In reaching that conclusion, the court identified three factors relevant to "whether a contradicting affidavit seeks to create a sham fact issue": (1) whether "the affiant was cross-examined during his earlier testimony"; (2) whether "the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence"; and (3) whether "the earlier testimony reflects confusion which the affidavit attempts to explain."  *Id*.

However, before applying the *Ralston* factors, a court must determine whether the affidavit at issue directly contradicts the previous deposition testimony.  *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1218 n.3 (10th Cir. 2014) (holding that witness's affidavit did not "fit[] the sham affidavit paradigm" because it did not "contain any allegations that would directly contradict [the witness's] earlier deposition testimony" (internal quotation marks omitted)); *see also Law Co., Inc. v. Mohawk Constr. & Supply Co., Inc.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (holding that the district court abused its discretion by excluding affidavits without first identifying how they conflicted with prior deposition testimony).

At his deposition, plaintiff testified that he was currently "living" at 136 Dawson Place in Longmont, Colorado, and had continuously lived there since November 2019.  Docket No. 35-2 at 3:21-4:16.  He also testified that he was "residing" there at the time of the accident.  *Id.*  The following questions and answers then took place:

> Q.  Okay.  Have you lived in any other apartments, condos, homes other than that one?
>
> A.  Previously or during the time?
>
> Q.  During the time.
>
> A.  No.

6

> Q. Okay, as you sit here today, do you expect to continue living there?
>
> A. I do.
>
> Q. I mean, do you have any period of time that's – that you have to leave or is that for as long as you want to stay and it's helpful that you will stay there?
>
> A. Yeah, I mean, for the foreseeable future I'll be here, yeah.

*Id.* at 4:3-16. It is apparent from plaintiff's testimony that he regarded the word "living" and "residing" as meaning the same thing since his answers to questions using one word or the other do not distinguish between them. *See, e.g., id.* at 4:17-19 ("And how many other people reside in that house? A: There are six others."). When asked whether he could stay at Oxford House "for as long as you want," plaintiff testified, "for the foreseeable future I'll be here." *Id.*, 4:13-16.

In the affidavit attached to plaintiff's response to the State Farm's summary judgment motion, plaintiff states that, "[a]s of October 31, 2020, I still considered myself to be a resident of my parent's [sic] home and their home address to be my permanent address." Docket No. 50-1 at 1, ¶ 7. He also stated that, "[a]s of October 31, 2020, I always intended to eventually return to my parent's [sic] home after I felt comfortable leaving the sober-living facility." *Id.* at 2, ¶ 15.

Plaintiff claims that "there was never any discrepancy" between his deposition and his affidavit and that the affidavit did not "materially alter" plaintiff's deposition testimony. Docket No. 54 at 3. In particular, plaintiff relies on the argument that State Farm failed to ask plaintiff whether he resided at more than one residence and whether he stayed at his parents' home while he "stayed" at Oxford House. *Id.* at 4. However, the issue is not whether he was asked those questions, but whether the questions that

7

State Farm asked plaintiff would reasonably be understood to ask for the location of any place else that plaintiff resided or lived.  The Court finds that State Farm asked him such a question: "[h]ave you lived in any other apartments, condos, homes other than [Oxford House]?"  Docket No. 35-2 at 4:3-4.  This question included the word "homes," which plaintiff would reasonably understand to include his parents' house.  Plaintiff answered no.  *Id*., 4:5-7.  Thus, the Court finds that paragraph 7 of plaintiff's affidavit, where plaintiff claims to be a resident of his parent's house, directly contradicts his deposition testimony.  The Court also finds a direct conflict between the statement in plaintiff's affidavit that he "always intended to eventually return to my parent[s'] home after I felt comfortable leaving the sober-living facility," Docket No. 50-1 at 2, ¶ 15, and his deposition testimony that "for the foreseeable future I'll be here."  Docket No. 35-2 at 4:15-16.  In his affidavit, plaintiff claims that he "always intended" to return to his parents' house, presumably to live, whereas in his deposition he could only foresee living at Oxford House.

      Having found direct conflicts between certain paragraphs of plaintiff's affidavit and plaintiff's deposition testimony, the Court now turns to the *Ralston* factors.  Plaintiff makes no argument as to why the *Ralston* factors do not weigh in favor of finding that those portions of plaintiff's affidavit are sham facts.  The Court finds that plaintiff was cross-examined about his residence, that he knew where he resided at the time, and that he was not confused about the meaning of residency during the deposition.  As a result, the Court finds that paragraphs 7 and 15 of plaintiff's affidavit are attempts to raise sham facts to defeat summary judgment.  Those paragraphs will therefore be disregarded.

### B.  Summary Judgment

Plaintiff raises claims for breach of contract, statutory bad faith, and common law bad faith.  Docket No. 3 at 6-8.  State Farm moves for summary judgment on all of plaintiff's claims.  Docket No. 35 at 1.  State Farm argues plaintiff's breach of contract claim fails because plaintiff is not covered by a State Farm policy that includes UIM benefits.  *Id.* at 8.  Defendant argues that both of plaintiff's bad faith claims necessarily fail because plaintiff is not entitled to any UIM benefits and because plaintiff fails to show that defendant acted unreasonably.  *Id.* at 11-12.  Finally, State Farm argues that it is entitled to summary judgment on all of plaintiff's claims based on plaintiff's failure to cooperate.  *Id.* at 19.  Plaintiff opposes defendant's motion.  Docket No. 50 at 1.

#### *1.  Insurance Coverage*

Defendant argues plaintiff is not entitled to UIM benefits under the Nissan Policy he held or under the Dodge Policy his parents held.  Docket No 35 at 8-11.  Plaintiff does not dispute that the Nissan Policy does not include UIM benefits.  *See id.* at 5, ¶¶ 6-7; Docket No. 50 at 7.  Plaintiff argues, however, that he is entitled to benefits under the Dodge Policy.  Docket No. 50 at 14-15.

The Dodge Policy provides coverage for named insureds, in this case plaintiff's parents, "resident relatives," "any other person, while occupying a vehicle that is owned by [the named insureds] or owned by any resident relative, and who is provided Liability Coverage through a policy issued by us," and "any person entitled to recover compensatory damages as a result of bodily injury to an insured."  Docket No. 35-7 at 4.  Plaintiff argues that he is a "resident relative" entitled to coverage.  Docket No. 50 at 15-16.

9

> Colorado law defines a "resident relative" as:
>
> a person who, at the time of the accident, is related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household, even if temporarily living elsewhere, and any ward or foster child who usually resides with the named insured, even if temporarily living elsewhere.

Colo. Rev. Stat. § 10-4-601(13). Consistent with this definition, the policy defines "resident relative" with the same language. *See* Docket No. 35-7 at 50. Defendant argues that, based on plaintiff's deposition testimony, it is undisputed that his only residence at the time of the accident was Oxford House. Docket No. 35 at 10. Under Colorado law, a party can have multiple residences at the same time. *Grippin v. State Farm Mut. Auto. Ins. Co.*, 409 P.3d 529, 533 (Colo. App. 2016). In determining whether an individual is a "resident relative" pursuant to Colo. Rev. Stat. § 10-4-601(13),

> courts consider factors such as the subjective or declared intent of the individual, the formality or informality of the relationship between the individual and members of the household, the existence of another place of lodging, and the relative permanence or transient nature of the individual's residence in the household. . . . No single factor is determinative; rather, they should all be considered "in light of the basic consideration of whether the parties to the insurance contract intended that coverage would extend to the alleged insured."

*Grippin*, 409 P.3d at 532 (quoting *Iowa Nat'l Mut. Ins. Co. v. Boatright*, 516 P.2d 439, 440 (Colo. App. 1973)).

Even if plaintiff's deposition is evidence of plaintiff's subjective or declared intent that his residence did not include his parents' home, such evidence is a "single factor" that is not determinative, but should be considered along with other evidence of residency. *Id.* Other evidence bearing on the issue of whether plaintiff is a "resident relative" is that plaintiff receives mail at his parents' house, maintains a room and possessions at his parents' house, and stays at his parents' house 2-3 times per month.

10

Docket No. 50-1 at 2. The affidavits of plaintiffs' parents contain similar information. *See* Docket Nos. 50-2 and 50-3. State Farm argues that plaintiff's evidence does not "outweigh" the evidence it presents that plaintiff did not reside at his parents' house, Docket No. 53 at 5, but the Court may not weigh evidence at the summary judgment stage. *Bausman*, 252 F.3d at 1115.

Plaintiff has shown that there are at least disputed issues of material fact as to whether he is a "resident relative." As a result, this portion of defendant's summary judgment motion will be denied.

Alternatively, State Farm argues that, if plaintiff is indeed an insured under the Dodge Policy, State Farm is entitled to summary judgment on plaintiff's breach of contract claim because of plaintiff's failure to cooperate. *See* Docket No. 35 at 19.

In Colorado, cooperation clauses in insurance contracts are enforceable, *see Cribari v. Allstate Fire & Cas. Ins. Co.* (*Cribari I*), 375 F. Supp. 3d 1189, 1198 (D. Colo. 2019), and an insured can forfeit his right to recover if he fails to cooperate with the insurer as required by the policy. *See Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001)). However, to forfeit benefits under an insurance policy, the non-cooperation must be "material and substantial." *See Cribari I*, 375 F. Supp. 3d at 1198 (citing *Secrist*, 33 P.3d at 1275). Although failure to cooperate is usually a question of fact, when "the record can produce no other result, [a court] may determine the issue of non-cooperation as a matter of law." *Walker v. State Farm Fire & Cas. Co.*, No. 16-cv-00118-PAB-STV, 2017 WL 1386341, at *3 (D. Colo. Feb. 23, 2017) (citing *Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989)). Whether an

11

insurer suffers material and substantial prejudice from the insured's lack of cooperation turns on whether "the insurer has been able to complete a reasonable investigation with regard to whether the insured's claim is valid. If the insured's refusal to cooperate prevents the insurer from completing such a reasonable investigation, prejudice should be found to exist." *See id.* at *4.

The Dodge Policy contains a cooperation clause that states an insured "must cooperate with [defendant] and, when asked, assist [defendant] in: (1) making settlements; (2) securing and giving evidence; and (3) attending, and getting witnesses to attend, depositions, hearings, and trials." Docket No. 35-7 at 40. Given that the Dodge Policy required an insured, as plaintiff claims to be, to cooperate with defendant's investigation, the issue is whether the undisputed evidence shows that plaintiff failed to cooperate and whether that lack of cooperation was substantial and material. *Cribari I*, 375 F. Supp. 3d at 1198.

State Farm does not claim that plaintiff failed to provide it with necessary claim information or the ability to obtain such information. Rather, State Farm claims that "Mr. Miller filed suit without ever informing State Farm of the value he placed on his claim, without any attempt to reach an agreement, and before the 30 day time-limit he had imposed in his December 29 demand letter." Docket No. 35 at 19. In regard to plaintiff's alleged failure to provide the value plaintiff placed on his claim, State Farm does not point to any undisputed fact that shows plaintiff failed to provide such a valuation in response to any request from defendant or make any legal argument that plaintiff had a duty to do so absent such a request. As for plaintiff's failure to attempt to reach "an agreement," State Farm provides no authority for the proposition that plaintiff

needed to attempt to settle his claim before filing suit.  Although defendant correctly notes that courts have found that defending a lawsuit, without the ability to investigate a claim, can constitute prejudice, none of the cases defendant cites stands for the proposition that filing a lawsuit constitutes a failure to cooperate.  *See id.* (citing *Hall v. Allstate Fire and Cas. Ins. Co.*, 20 F.4th 1319 (10th Cir. 2021) and *Cribari v. Allstate Fire and Cas. Ins. Co.* (*Cribari II*), 861 F. App'x 693, 702 (10th Cir. 2021) (unpublished)).  In both *Hall* and *Cribari II*, the insured's failure to cooperate in some way impeded the insurance company's ability to investigate a claim or defend a lawsuit which made defense of the suit prejudicial.  *See Hall*, 20 F.4th at 1324 (finding a failure to cooperate where plaintiff failed to respond to defendant's communications for five months); *Cribari II*, 861 F. App'x at 697 (acknowledging a failure to cooperate defense based on insured's failure to provide insurer with a cost estimate for future surgery and associated wage loss).  State Farm does not provide support for the proposition that the filing of a lawsuit before the insurer has adequate time to fully review and investigate information that the insured has provided is itself a violation of the cooperation clause.  The Court will not grant summary judgment on defendant's non-cooperation argument.

### 2. Bad Faith Claims

State Farm moves to dismiss plaintiff's statutory and common law bad faith claims.  Docket No. 35 at 11.  State Farm argues plaintiff cannot show that defendant acted unreasonably.  *Id.* at 12.  Section 10-3-1115 of the Colorado Revised Statutes provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."  Colo. Rev. Stat. § 10-3-1115(1)(a).  To prove a statutory bad faith violation, a

13

plaintiff must show that: (1) benefits were owed under the policy; and (2) defendant unreasonably delayed or denied payment of plaintiff's claim.  See Colo. Rev. Stat. § 10-3-1115; *Edge Construction, LLC v. Owners Ins. Co.*, No. 14-cv-00912-MJW, 2015 WL 4035567, at *6 (D. Colo. June 29, 2015) ("[I]n order to prevail on its statutory unreasonable delay/denial claim, [plaintiff] first has to prove entitlement to benefits.").  For an insured to prevail on a common-law bad faith claim, the insured must prove that (1) the insurer's conduct was unreasonable and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable.  *Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *9 (D. Colo. Mar. 28, 2022) (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985); *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997)).

       State Farm argues plaintiff has not shown that defendant delayed or denied any benefits that plaintiff is entitled to.  Docket No. 35 at 13-17.  Specifically, defendant maintains that it did not deny plaintiff's claim before plaintiff filed suit on January 11, 2021 and, even if it did, any denial was warranted because plaintiff did not submit any medical bills to State Farm that exceeded the tortfeasor's policy limit before filing this lawsuit.  *Id.* at 13-14.  In terms of plaintiff's allegations of delay, defendant argues that it did not delay the payment of any benefits to plaintiff because, at the time plaintiff filed suit, defendant was actively investigating plaintiff's claim and the time between plaintiff contacting defendant and plaintiff filing suit is insufficient to establish any delay in the investigation.  *Id.* at 14.

### a. Denial of Benefits

Defendant argues that plaintiff cannot show defendant denied plaintiff benefits. *Id.* at 13. Although State Farm admits that it denied plaintiff's claim after plaintiff filed suit, *id.* n.2, plaintiff does not demonstrate any dispute of facts as to whether defendant denied his claim before plaintiff filed suit.[3] Plaintiff demanded benefits on December 3, 2020, *id.* at 5, ¶ 14, and again on December 29, 2020. *Id.* at 6, ¶¶ 20-21. On January 4, 2021, defendant requested additional records from plaintiff in response to his demand. *Id.* at 7, ¶ 25. Plaintiff filed suit seven days later. *Id.*, ¶ 26. Plaintiff does not introduce any facts showing that defendant denied plaintiff's claim. Plaintiff states that, by December 28, 2020, defendant "had determined that it appeared that Mr. Miller would be fully compensated by the liability insurance limits of $25,000." Docket No. 50 at 11, ¶ 21. However, on December 28, 2020, defendant asked for more information from plaintiff. Docket No. 35 at 6, ¶ 17. Additionally, defendant again asked plaintiff for more information on January 4, 2021. *Id.* at 7, ¶ 25. Plaintiff introduces no facts to show that State Farm was not still actively investigating plaintiff's claim at the time plaintiff filed suit and no evidence of disputed facts that defendant denied his claim before plaintiff filed suit.

Additionally, defendant argues that plaintiff did not show damages exceeding $25,000, the limit of the tortfeasor's policy, at any time before filing the complaint. *Id.* at 13-14. Defendant states that, because plaintiff did not show any damages beyond those covered by the tortfeasor, State Farm could not have wrongfully denied any owed

---

[3] Plaintiff does not allege that State Farm unreasonably delayed or denied benefits through post-litigation conduct.

benefits. *Id.* Plaintiff responds that "State Farm [] haphazardly and prematurely determined that Mr. Miller had been fully compensated by the underlying policy of $25,000," Docket No. 50 at 17, but plaintiff admits he had not shown any evidence of plaintiff's damages exceeding $25,000 before filing this lawsuit. *Id.* at 7, ¶¶ 27-28; *see* Docket No. 35 at 7, ¶¶ 27-28. The Court agrees with State Farm that plaintiff has failed to show any evidence of an unreasonable denial of plaintiff's insurance claim before filing suit.

### b. Delay of Benefits

Defendant argues that plaintiff cannot show that State Farm unreasonably delayed its investigation of plaintiff's claim. Docket No. 35 at 14. Defendant argues that it was investigating plaintiff's claim when plaintiff filed suit and that, in any case, failing to complete an investigation within sixty days is not unreasonable as a matter of law. *Id.* The Court agrees with defendant that, to the extent plaintiff's bad faith claims are predicated on unreasonable delay in defendant's investigation, plaintiff does not identify any disputed facts that show defendant's unreasonable delay in processing plaintiff's claim before plaintiff's complaint was filed.

Plaintiff contacted State Farm on December 3, 2020 and filed this lawsuit 39 days later on January 11, 2021. *Id.* at 5, 7, ¶¶ 14, 26. Plaintiff's letter to State Farm on December 29, 2020 requested that State Farm respond within thirty days, Docket No. 35-13 at 2,[4] meaning plaintiff filed suit before the deadline he provided to defendant for

---

[4] Defendant does not include plaintiff's request for a response in thirty days in its statement of material facts, *see* Docket No. 35 at 6, ¶¶ 20-21, but states a letter requesting benefits was sent and argues in its brief that plaintiff's letter requested a response in thirty days, *id.* at 12, which is supported by the letter defendant includes as an exhibit. *See* Docket No. 35-13 at 2.

16

a response.  Plaintiff argues that defendant requested arbitrary records and did not actually collect all of plaintiff's medical records, but does not explain how this created an unreasonable delay.  Docket No. 50 at 17.  Plaintiff has not shown that there are facts, disputed or otherwise, that would cause a reasonable juror to believe that State Farm unreasonably delayed the handling of plaintiff's claim.  The Court agrees with defendant that State Farm is entitled to summary judgment on plaintiff's statutory and common law bad faith claims.[5]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant State Farm Mutual Automobile Insurance Co.'s Motion for Summary Judgment [Docket No. 35] is **GRANTED in part and DENIED in part**.  It is further

**ORDERED** that plaintiff's second and third claims for statutory and common law bad faith are **DISMISSED** with prejudice.  It is further

**ORDERED** that Defendant State Farm's Motion to Strike Affidavit of Taylor Miller [Docket No. 52] is **GRANTED in part**.

DATED February 21, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[5] Plaintiff argues that his common law bad faith claim can "be premised on [defendant's] failure to deny coverage in a timely manner alone."  Docket No. 50 at 20.  Assuming that plaintiff could base a claim on untimely denial, plaintiff fails to show any dispute of material fact that State Farm, paradoxically, delayed its denial of plaintiff's claim.  As noted above, State Farm was in the process of investigating plaintiff's claim within the thirty-day time frame that plaintiff requested when plaintiff filed this lawsuit.  Thus, the Court rejects plaintiff's theory.